UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY CARNEY,

                    Plaintiff,                                    Hon. Gordon J. Quist

v.                                                               Case No. 1:09 CV 598

DAN JOHNSON, et al.,

                    Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>.  (Dkt.

#24).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be

**granted in part and denied in part**.


## BACKGROUND

        The events giving rise to the present action occurred while Plaintiff was incarcerated in

the Marquette Branch Prison (MBP) and the Ionia Maximum Correctional Facility (ICF).  Plaintiff

initiated the present action on June 29, 2009, against MBP Nurse Dan Johnson, ICF Resident Unit

Manager (RUM) (unknown) Greenfield, ICF Warden Willie Smith, ICF Nurse Supervisor Marie Jordan,

Region I Clinical Administrative Assistant Jennie Stephenson, MBP Nurse Supervisor Sandra Shaker,

MBP Nurse Kimberly Calvin, MBP Resident Unit Officer (RUO) (unknown) Kerkala and an unknown

ICF Officer.  Plaintiff has also sued Correctional Medical Services, Inc. (CMS) and CMS Regional

Manager Lisa Sweet-Brown.  The following allegations are contained in Plaintiff's verified amended

complaint.

On March 10, 2008, while Plaintiff was incarcerated at ICF, Defendant Smith ordered Defendant Greenfield and an unidentified ICF Officer to pack Plaintiff's belongings so that he could be transferred to another facility. Greenfield and the unknown Officer failed to pack "several personal items" and "unopened food items." Plaintiff was not reimbursed for these items. After his belongings were packed, Plaintiff informed Defendant Greenfield that he needed his medication, which had also been packed. In response, Defendant Greenfield told Plaintiff, "you'll be alright" and then walked away.

While in transit, Plaintiff "began having chest pains as a direct result of not having his med[ication]." At some point, Plaintiff took three nitroglycerin pills in a ten-minute period. When this failed to resolve his chest pain, Plaintiff requested help from the "transportation staff." After arriving at MBP, Plaintiff was examined by "health care," after which he was transferred to Marquette General Hospital where examination revealed that Plaintiff was suffering from low levels of potassium. Plaintiff asserts that he was denied his medication from March 10, 2008, until March 14, 2008. Plaintiff further asserts that his chest pains and subsequent hospitalization "was a direct result of" the failure to provide him with his medication as he requested.

On March 13, 2008, Plaintiff was examined by Defendant Johnson. Plaintiff reported experiencing chest pains. Defendant Johnson "couldn't find anything wrong," but nevertheless referred Plaintiff to the doctor. Between March 14, 2008, and September 5, 2008, Plaintiff "had several disputes" regarding his health.[1] On September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]." Defendant Johnson undertook this action to "harass" Plaintiff and "have [Plaintiff's] cell

---

[1] Plaintiff has not identified the individual or individuals with whom he had these alleged disputes.

trashed by [prison] staff." Defendant Johnson was later instructed by an unidentified doctor to "take [Plaintiff's] blood pressure daily." Defendant Johnson refused to comply with this instruction and, moreover, cancelled "a few" of Plaintiff's medical call-outs "for no apparent reason."

On or about September 17, 2008, Plaintiff "ate and threw up." Defendant Johnson "dismissed" Plaintiff's concerns that he had been poisoned. Plaintiff informed Johnson that because he received a special diet tray "it's not impossible to target [Plaintiff] if that's tru[]ly what someone wanted to do." Defendant Johnson instead told Plaintiff that he had the flu and "refused to take and/or process" Plaintiff's request for medical care.

On November 5, 2008, Defendant Johnson brought Plaintiff's medication to his cell. Johnson told Plaintiff that "next time" he had to bring "a cup of water to his bars" to receive his medication, presumably so Johnson could watch Plaintiff take his medication. When Plaintiff asked Defendant Johnson why he was changing the manner in which he received his medication, Johnson called him an "asshole." Plaintiff told Johnson that he was "doing this" because a black man was President. Johnson retorted, "fuck you, I don't care nothing about that shit." Plaintiff then told Johnson, "don't be talking to me like that or I'll file another [grievance] on you." Shortly thereafter, Plaintiff was charged with threatening behavior and transferred to administrative segregation. Plaintiff asserts that Defendant Johnson charged him with threatening behavior as retaliation for Plaintiff having previously filed two grievances against him. Plaintiff remained in administrative segregation until January 26, 2009.

On February 12, 2009, Plaintiff again experienced chest pains. Plaintiff reported this to Defendant Calvin as she was making her rounds. Calvin responded, "Get your cup!" When Plaintiff repeated that he was having chest pains, Defendant Calvin stated, "I don't care" and walked away.

Approximately ten minutes later, Defendant Kerkala came to Plaintiff's cell. Plaintiff told him that he had taken three nitroglycerine pills and needed to see the nurse. Kerkala told Plaintiff that Calvin had reported that Plaintiff was being uncooperative. Defendant Kerkala departed without obtaining medical treatment for Plaintiff, who simply took another nitroglycerine pill and waited for RUO Hill to make his rounds. After speaking with Plaintiff, Hill contacted a nurse. The nurse spoke with the on-call doctor, who directed that Plaintiff be taken to Marquette General Hospital.

Plaintiff further claims that Defendants CMS and Lisa Sweet-Brown have a custom and/or practice of having their medical service providers deny his requests for out-patient treatment with a cardiologist to determine the cause of his chest pains.

Many of Plaintiff's claims have since been dismissed. The only claims remaining in this matter are Plaintiff's claims against Defendants Johnson, Calvin, Kerkela, Sweet-Brown, and CMS, as well as Plaintiff's Eighth Amendment claims against Defendant Greenfield. Defendants Johnson, Calvin, Kerkela, and Greenfield now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence

may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**ANALYSIS**

I.        **Exhaustion**

Defendants Kerkela, Calvin, and Johnson assert that Plaintiff's claims against them must be dismissed for failure to properly exhaust administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.  *Id.*  With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."  *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).  In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus.  *See Woodford,* 548 U.S. at 88.  In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999).  To "'protect the

integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

A.      Defendants Robie Kerkela and Kim Calvin

As discussed above, Plaintiff's claims against Defendants Kerkela and Calvin arise from a February 12, 2009 incident in which Defendants allegedly refused Plaintiff's requests for medical care. Defendants Kerkela and Calvin assert that Plaintiff has failed to properly exhaust such claims. Specifically, Defendants assert that Plaintiff "did not file any grievances naming them." In assessing this argument, it must be remembered that the underlying purpose of the exhaustion requirement is to afford to prison officials sufficient notice regarding prisoner complaints so that they can in the first instance attempt to resolve the issue. *See, e.g., Schafer v. Curry*, 2009 WL 1562957 at *6 (N.D. Cal., June 3, 2009) (citing *Jones v. Bock*, 549 U.S. 199, 217-18 (2007)); *Uriarte v. Schwarzenegger*, 2008 WL 696924 at *7 (S.D. Cal., Mar. 13, 2008).

In response to the present motion, Plaintiff has submitted a copy of a grievance he filed on February 16, 2009, against "Kim Unknown, R/N" and "Unknown Mekehla, RUO" concerning the incident on February 12, 2009, which gives rise to his claims against Defendants Kerkela and Calvin. (Dkt. #35). In response to Plaintiff's grievance, prison officials interviewed "RN Calvin" regarding the incident in question. This certainly indicates that Plaintiff's reference to "Kim Unknown, R/N" was sufficient to put prison officials on notice that the grievance was being asserted against Defendant Calvin. Accordingly, the undersigned recommends that Defendant Calvin's motion for summary judgment for failure to exhaust be denied.

Whether the reference to "Unknown Mekehla, RUO" was sufficient to put prison officials on notice that Plaintiff was asserting his grievance against Defendant Kerkela is a closer call, but the Court nonetheless reaches the same conclusion. Plaintiff's grievance concerns a single discrete incident on a specific date. Plaintiff identified the work shift during which the incident occurred. While the

grievance refers to "Unknown Mekehla," Plaintiff identified this individual as a RUO (Resident Unit Officer). There is no indication that there was any prison official named Mekehla or that any other prison official (besides Defendant Calvin) was interviewed in response to Plaintiff's grievance. Thus, while Plaintiff misidentified Defendant Kerkela in his grievance, the undersigned concludes that there remains a legitimate factual question as to whether Plaintiff's grievance included sufficient information to enable prison officials to determine (through reasonable efforts) against whom the grievance was asserted. In other words, the undersigned concludes that Defendant has failed to satisfy his burden "that no reasonable trier of fact could find other than for" him on this particular issue. Accordingly, the undersigned recommends that Defendant Kerkela's motion for summary judgment be denied.[2]

### B.    Defendant Johnson

As discussed above, Plaintiff has asserted several allegations against Defendant Johnson, who asserts that certain of Plaintiff's claims must be dismissed for failure to properly exhaust administrative remedies.

### 1.    Medical Call-Outs Claim

In his amended complaint, Plaintiff asserts that on September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]." (Dkt. #5 at ¶ 120). Defendant Johnson undertook this action to

---

[2]  Defendants Calvin and Kerkela also assert that they are entitled to qualified immunity as to Plaintiff's Eighth Amendment claims. Plaintiff's allegations state a claim for violation of his right to be free from cruel and unusual punishment. Defendants have failed to present evidence demonstrating the absence of a genuine factual dispute on this point. It was clearly established long before the conduct giving rise to this action that denying medical care to a prisoner violates the Eighth Amendment. Accordingly, the undersigned recommends that Defendants Calvin and Kerkela are not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

"harass" Plaintiff and "have [Plaintiff's] cell trashed by [prison] staff." (Dkt. #5 at ¶¶ 122). Defendant

Johnson was later instructed by an unidentified doctor to "take [Plaintiff's] blood pressure daily." (Dkt.

#5 at ¶¶ 124). Defendant Johnson refused to comply with this instruction and, moreover, cancelled "a

few" of Plaintiff's medical call-outs "for no apparent reason." *Id.*

Defendant Johnson asserts that Plaintiff "has not properly exhausted as to his claim of

cancelled medical callouts. . .because the grievance did not pertain to or identify Defendant Dan

Johnson." In support of this argument, Defendant Johnson cites to a single grievance - MBP-08-07-

1223-12d1. (Dkt. #25, Exhibit C). The Court need not resolve Defendant's argument that Plaintiff

failed to name him in this grievance, however, because this grievance has nothing to do with Plaintiff's

claims that Defendant Johnson cancelled "a few" of his medical call-outs "for no apparent reason."

While Plaintiff offers few specifics regarding this particular claim, it nevertheless seems clear from the

provisions of Plaintiff's amended complaint cited above that the incident in question occurred *after*

September 5, 2008. The grievance Defendant relies on in support of his claim for relief regards an

incident that allegedly occurred on July 11, 2008. Plaintiff's amended complaint contains no allegations

regarding an incident that occurred on July 11, 2008.

Defendant has failed to carry his burden to demonstrate that Plaintiff failed to properly

exhaust this particular claim. The undersigned, therefore, recommends that Defendant Johnson is not

entitled to summary judgment, on failure to exhaust grounds, as to Plaintiff's medical call-outs claim.


2.       Failure to Monitor Blood Pressure and Inappropriate Language Claims

As noted previously, Plaintiff asserts that Defendant Johnson failed to monitor his blood

pressure as instructed and, moreover, spoke to him using inappropriate language. Defendant Johnson

asserts that he is entitled to relief as to these claims because Plaintiff failed to file any grievances concerning these particular claims.

In support of his position, Defendant has submitted copies of numerous grievances Plaintiff has filed, none of which concern these claims. In response, Plaintiff has not identified any additional grievances that he filed concerning these claims. Instead, Plaintiff asserts that two of the grievances identified by Defendant establish that he has properly exhausted these claims. Specifically, Plaintiff relies on Grievance MBP-08-11-2077-27a and Grievance MBP-08-12-2127-27a. (Dkt. #25, Exhibits H-I). Neither of these grievances, however, concern Plaintiff's allegations that Defendant Johnson failed to monitor his blood pressure or used inappropriate language. Accordingly, the undersigned recommends that Plaintiff's claims that Defendant Johnson failed to monitor his blood pressure and used inappropriate language be dismissed without prejudice for failure to exhaust administrative remedies.


## II.        Retaliation Claim against Defendant Johnson

Plaintiff asserts that he was subjected to unlawful retaliation by Defendant Johnson. According to Plaintiff, on November 5, 2008, Defendant Johnson delivered Plaintiff's medication to his cell. (Dkt. #5 at ¶ 135). Defendant also told Plaintiff that "next time" he had to bring "a cup of water to his bars" to receive his medication, presumably so Johnson could watch Plaintiff take his medication. *Id.* When Plaintiff asked Defendant Johnson why he was changing the manner in which Plaintiff received his medication, Johnson called him an "asshole." (Dkt. #5 at ¶ 136). Plaintiff told Johnson that he was "doing this" because a black man was President. (Dkt. #5 at ¶ 137). Johnson retorted, "fuck you, I don't care nothing about that shit." (Dkt. #5 at ¶ 138). Plaintiff then told Johnson, "don't be

talking to me like that or I'll file another [grievance] on you." (Dkt. #5 at ¶ 139). According to Plaintiff, he was "shortly thereafter" charged with threatening behavior and transferred to administrative segregation. (Dkt. #5 at ¶ 140). Plaintiff asserts that Defendant Johnson charged him with threatening behavior as retaliation for Plaintiff having previously filed two grievances against him.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Defendant Johnson does not contend that Plaintiff was not engaged in protected conduct or that charging him with a misconduct violation does not constitute adverse action. Instead, Defendant asserts that he is entitled to summary judgment because Plaintiff cannot establish that the adverse action taken against him was motivated by Plaintiff's protected conduct. With respect to this element of the analysis, Plaintiff must establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a

motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred"). Furthermore, if the official demonstrates that he "would have taken the same action even without the protected activity," he is entitled to summary judgment. *Eby*, 481 F.3d at 441-42.

The Sixth Circuit has held that where an inmate alleges that a prison official falsely charged him with a misconduct violation for retaliatory purposes, the prison official is entitled to relief if the prisoner was found guilty (based on some quantum of evidence) of the misconduct violation. *See, e.g.*, *Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) ("[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim'") (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Implicit in this conclusion is that a finding that the allegedly retaliatory misconduct charge was supported by the evidence constitutes sufficient evidence on the issue of causation to warrant summary judgment for the prison official. The Sixth Circuit has suggested that this general rule can be overcome if the prisoner introduces evidence that the prison official in question engaged in selective enforcement of the relevant prison rules and regulations. *See Eby*, 481 F.3d at 442. Plaintiff, however, offers neither allegation nor evidence that Defendant Johnson has ever selectively enforced MDOC policies.

The Court recognizes that Plaintiff has not alleged that Defendant Johnson *falsely* charged him with threatening behavior. In fact, Plaintiff expressly states in his amended complaint that he "does not challenge the misconduct findings." (Dkt. #5 at ¶ 142). This distinction is of no consequence, however. Based on the above authority, Plaintiff's concession that he was appropriately charged with and convicted of threatening behavior, coupled with his failure to present any evidence

that Defendant engaged in selective enforcement of the relevant rules and regulations, supports Defendant's position that Plaintiff cannot establish the requisite causal link to maintain a retaliation claim. Aside from assertions of "bare allegations of malice," Plaintiff offers no evidence that Defendant Johnson charged him with threatening behavior for a retaliatory purpose. The undersigned, therefore, recommends that Defendant Johnson is entitled to summary judgment as to this claim.

### III.        Cell Shakedown Claim

In his amended complaint, Plaintiff alleges that on September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]." (Dkt. #5 at ¶ 120). Defendant Johnson undertook this action to "harass" Plaintiff and "have [Plaintiff's] cell trashed by [prison] staff." (Dkt. #5 at ¶ 122). Defendant Johnson moves for relief as to this claim, on the ground that "a single search" of Plaintiff's cell "does not rise to the level of an Eighth Amendment violation."

The Court agrees with Defendant that the alleged search of Plaintiff's cell does not, by itself, state a claim on which relief may be granted. *See, e.g., Tate v. Campbell*, 85 Fed. Appx. 413, 417 (6th Cir., Dec. 15, 2003) ("the single search of a prisoner's cubicle does not rise to the level of an Eighth Amendment violation"). However, in response to the present motion Plaintiff asserts that the search of his cell was simply part of "an entire campaign of harassment." Specifically, Plaintiff (in his response to the present motion) states that he "has set forth in the record that [Defendant] Johnson has not only had his cell searched on that one occasion, but there were 'several' callouts that [Defendant] Johnson cancelled, [Defendant] being 'verbally abusive' at times then [Defendant] Johnson embellished a misconduct report."

In his amended complaint, Plaintiff has asserted allegations concerning such. Plaintiff alleges that Defendant Johnson cancelled "a few" of his medical call-outs "for no apparent reason." (Dkt. #5 at ¶ 124). Plaintiff also alleges that between March 12, 2008, and September 5, 2008, Defendant Johnson made "comments about the seriousness of [Plaintiff's] chest pains." (Dkt. #5 at ¶¶ 118-19). Based on Plaintiff's pleadings, therefore, the Court interprets Plaintiff's amended complaint as asserting a claim that his Eighth Amendment rights were violated by Defendant Johnson's alleged "campaign of harassment," which consisted of more than the single search of Plaintiff's cell.

In *Johnson v. Dellatifa*, 357 F.3d 539 (6th Cir. 2004), the court examined allegations by a prisoner that his Eighth Amendment rights had been violated as a result of "various acts of harassment." *Id.* at 545-46. In that case, the prisoner alleged that the defendant

> continuously bangs and kicks Johnson's cell door, throws his food trays through the bottom slot of his cell door so hard that the top flies off, makes aggravating remarks to him, makes insulting remarks about his hair being too long, growls and snarls through his window, smears his window to prevent him from seeing out of it, behaves in a racially prejudicial manner toward him and jerks and pulls him unnecessarily hard when escorting him from his cell. Johnson contends that Stasewish knows that he suffers from hypertension and intentionally harasses him in an attempt to cause him to suffer a heart attack, stroke or nervous breakdown.

*Id.* at 545.

> With respect to these allegations, the Sixth Circuit concluded

> while the allegations, if true, demonstrate shameful and utterly unprofessional behavior by Stasewish, they are insufficient to establish an Eighth Amendment violation. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." We have held that harassment and verbal abuse, such as Johnson has described, do not constitute the type of infliction of pain that the Eighth Amendment prohibits.

*Id.* at 546 (internal citations omitted).

Plaintiff's claims that he was subjected to verbal harassment and a single search of his cell fall far short of the allegations in the *Dellatifa* case. The undersigned, therefore, recommends that Defendant Johnson is entitled to relief on Plaintiff's harassment claim as such fails to state a claim on which relief may be granted. *See Ashcroft v. Iqbal*, _____ U.S. _____, 129 S.Ct. 1937, 1949 (2009); *Dellatifa*, 357 F.3d at 545-46. However, Plaintiff's claim that Defendant Johnson cancelled his medical call-outs does, in the Court's estimation, state a claim on which relief may be granted for violation of his Eighth Amendment right not to be denied medical treatment.[3] In sum, therefore, the undersigned recommends that Defendant Johnson is entitled to relief on Plaintiff's harassment claim, based on alleged verbal harassment and the September 5, 2008 search of his cell, but that Plaintiff's medical call-outs claim go forward.[4]

**IV.        Failure to Treat Alleged Poisoning Claim**

Plaintiff asserts that on or about September 17, 2008, he "ate and threw up." (Dkt. #5 at ¶ 127). Defendant Johnson "dismissed" Plaintiff's concerns that he had been poisoned. (Dkt. #5 at ¶ 127). Plaintiff informed Johnson that because he received a special diet tray "it's not impossible to target [Plaintiff] if that's tru[]ly what someone wanted to do." (Dkt. #5 at ¶ 128). Defendant Johnson

---

[3] The Court realizes that Defendant has not argued that Plaintiff's medical call-outs allegations fail to state a claim on which relief may be granted. Nevertheless, because Plaintiff referenced these allegations as part of his assertion that he was subject to harassment, the Court simply wants to clarify its interpretation of Plaintiff's complaint.

[4] Defendant Johnson asserts that he is entitled to qualified immunity as to this claim. Plaintiff's allegations state a claim for violation of his right to be free from cruel and unusual punishment. Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point. It was clearly established long before the conduct giving rise to this action that denying a prisoner medical treatment violated the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Johnson is not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

instead told Plaintiff that he had the flu and "refused to take and/or process" Plaintiff's request for medical care. (Dkt. #5 at ¶¶ 129-30). The Court has interpreted these allegations as asserting the claim that Defendant Johnson denied Plaintiff medical care in violation of the Eighth Amendment. Defendnant Johnson asserts that he is entitled to summary judgment as to this claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

Defendant Johnson has submitted an affidavit in which he asserts that he examined Plaintiff and concluded that in his "professional opinion" Plaintiff had not been poisoned. (Dkt. #25, Exhibit Q). Rather than accede to Plaintiff's request for medical treatment, Defendant provided Plaintiff with an alternative "plan of care." Plaintiff offers no evidence to the contrary. In sum, the record reveals that Plaintiff was not denied medical treatment in this instance, but that he simply disagrees with Defendant Johnson's diagnosis and treatment recommendations. Such fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Johnson is entitled to summary judgment as to this claim.

**V.        Plaintiff's Eighth Amendment Claims against Defendant Greenfield**

Plaintiff alleges that on March 10, 2008, Defendant Greenfield packed his personal belongings so that Plaintiff could be transferred to another facility.  (Dkt. #5 at ¶ 101).  After his belongings were packed, Plaintiff informed Defendant Greenfield that he needed his medication, which had been packed.  (Dkt. #5 at ¶ 103).  In response, Defendant Greenfield told Plaintiff, "you'll be alright" and then walked away.  (Dkt. #5 at ¶ 104).

While in transit, Plaintiff "began having chest pains as a direct result of not having his med[ication]."  (Dkt. #5 at ¶ 106).  At some point, Plaintiff took three nitroglycerin pills in a ten-minute period.  (Dkt. #5 at ¶ 107).  When this failed to resolve his chest pain, Plaintiff requested help from the "transportation staff."  (Dkt. #5 at ¶ 108).  After arriving at MBP,[5] Plaintiff was examined by "health care," after which he was transferred to Marquette General Hospital where examination revealed that Plaintiff was suffering from low levels of potassium.  (Dkt. #5 at ¶¶ 109-11).  Plaintiff alleges that his chest pains and subsequent hospitalization "was a direct result of" Defendant Greenfield's failure to provide him with his medication as he requested.  (Dkt. #5 at ¶ 114).  Defendant Greenfield moves for summary judgment as to this claim.

The allegations in Plaintiff's verified amended complaint,[6] if believed, are sufficient to satisfy both the objective and subjective prongs of the analysis.  In support of his motion for summary judgment, Defendant Greenfield merely asserts, "I do not recall Plaintiff informing me that he had any

---

[5]  In his amended complaint, Plaintiff does not indicate the date on which he arrived at MBP.  In support of the present motion, Defendants have submitted evidence that Plaintiff was admitted to Marquette General Hospital on March 11, 2008, at 6:23 p.m.  (Dkt. #25, Exhibit R).

[6]  As is well recognized, a verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment."  *American Civil Liberties Union of Kentucky v. Grayson County*, 591 F.3d 837, 844 n.2 (6th Cir. 2010) (citations omitted).

non-restricted medication, or emergency needs medication, which he needed access to during the transport." (Dkt. #25, Exhibit S). Defendant further asserts, "I did not deliberately deny Plaintiff access to any non-restricted medication (such as nitroglycerin pills). (Dkt. #25, Exhibit S). Defendant has also submitted a copy of one page of Plaintiff's medical records which indicates that upon admission to the hospital on March 11, 2008, Plaintiff's potassium levels were normal. (Dkt. #25, Exhibit R). Defendant's submissions do not entitle him to the relief sought.

Defendant's assertion that he does not recall Plaintiff requesting his medication prior to transit is an ambiguous statement that is insufficient to overcome Plaintiff's definitive assertion on the subject. Defendant's assertion that he did not *deliberately* deny Plaintiff access to his medication is not an unequivocal factual assertion, but rather an inadmissible legal conclusion. *See, e.g., Hann v. Michigan*, 2010 WL 1006206 at *9 (E.D. Mich., Feb. 25, 2010) ("legal conclusions are totally ineffectual, and are not to be given any consideration or weight whatsoever" in the context of a motion for summary judgment). Finally, while evidence regarding Plaintiff's potassium levels may be relevant, such is hardly dispositive on the matter and, moreover, fails to overcome the allegations in Plaintiff's verified amended complaint. In sum, Defendant has failed to demonstrate the absence of a genuine factual dispute concerning this claim. Accordingly, the undersigned recommends that Defendant Greenfield's motion for summary judgment be denied.[7]

---

[7] Defendant Greenfield asserts that he is entitled to qualified immunity as to this claim. Plaintiff's allegations state a claim for violation of his right to be free from cruel and unusual punishment. Defendant has failed to present evidence demonstrating the absence of a genuine factual dispute on this point. It was clearly established long before the conduct giving rise to this action that denying medical treatment to a prisoner violates the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Greenfield is not entitled to qualified immunity. *See Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #24), be **granted in part and denied in part**.  Specifically, the undersigned recommends that Defendants Calvin, Kerkela, and Greenfield are not entitled to summary judgment and that Plaintiff's claims against these Defendants go forward.  With respect to Plaintiff's claims against Defendant Johnson, the undersigned recommends that Defendant Johnson is entitled to summary judgment as to all Plaintiff's claim, save Plaintiff's claim regarding the allegedly cancelled medical call-outs which should be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  July 21, 2010                                        /s/ Ellen S. Carmody
                                                            ELLEN S. CARMODY
                                                            United States Magistrate Judge