UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JEFFREY CARNEY,

       Plaintiff,                                 Hon. Gordon J. Quist

v.                                                  Case No. 1:09 CV 598

DAN JOHNSON, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Kerkela and Calvin's Second Motion for Summary Judgment</u>. (Dkt. #49). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


## BACKGROUND

The events giving rise to the present action occurred while Plaintiff was incarcerated in the Marquette Branch Prison (MBP) and the Ionia Maximum Correctional Facility (ICF). Plaintiff initiated the present action on June 29, 2009, against numerous individuals and entities. The following allegations are contained in Plaintiff's amended complaint.

On March 10, 2008, while Plaintiff was incarcerated at ICF, Defendant Smith ordered Defendant Greenfield and an unidentified ICF Officer to pack Plaintiff's belongings so that Plaintiff could be transferred to another facility. Greenfield and the unknown Officer failed to pack "several personal items" and "unopened food items." Plaintiff was not reimbursed for these items. After his belongings were packed, Plaintiff informed Defendant Greenfield that he needed his medication, which

had also been packed. In response, Defendant Greenfield told Plaintiff, "you'll be alright" and then walked away.

While in transit, Plaintiff "began having chest pains as a direct result of not having his med[ication]." At some point, Plaintiff took three nitroglycerin pills in a ten-minute period. When this failed to resolve his chest pain, Plaintiff requested help from the "transportation staff." After arriving at MBP, Plaintiff was examined by "health care," after which he was transferred to Marquette General Hospital where examination revealed that Plaintiff was suffering from low levels of potassium. Plaintiff asserts that he was denied his medication from March 10, 2008, until March 14, 2008. Plaintiff further asserts that his chest pains and subsequent hospitalization "was a direct result of" the failure to provide him with his medication as he requested.

On March 13, 2008, Plaintiff was examined by Defendant Johnson. Plaintiff reported experiencing chest pains. Defendant Johnson "couldn't find anything wrong," but nevertheless referred Plaintiff to the doctor. Between March 14, 2008, and September 5, 2008, Plaintiff "had several disputes" regarding his health.[1] On September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]." Defendant Johnson undertook this action to "harass" Plaintiff and "have [Plaintiff's] cell trashed by [prison] staff." Defendant Johnson was later instructed by an unidentified doctor to "take [Plaintiff's] blood pressure daily." Defendant Johnson refused to comply with this instruction and, moreover, cancelled "a few" of Plaintiff's medical call-outs "for no apparent reason."

On or about September 17, 2008, Plaintiff "ate and threw up." Defendant Johnson "dismissed" Plaintiff's concerns that he had been poisoned. Plaintiff informed Johnson that because he

---

[1] Plaintiff has not identified the individual or individuals with whom he had these alleged disputes.

received a special diet tray "it's not impossible to target [Plaintiff] if that's tru[]ly what someone wanted to do." Defendant Johnson instead told Plaintiff that he had the flu and "refused to take and/or process" Plaintiff's request for medical care.

On November 5, 2008, Defendant Johnson brought Plaintiff's medication to his cell. Johnson told Plaintiff that "next time" he had to bring "a cup of water to his bars" to receive his medication, presumably so Johnson could watch Plaintiff take his medication. When Plaintiff asked Defendant Johnson why he was changing the manner in which he received his medication, Johnson called him an "asshole." Plaintiff told Johnson that he was "doing this" because a black man was President. Johnson retorted, "fuck you, I don't care nothing about that shit." Plaintiff then told Johnson, "don't be talking to me like that or I'll file another [grievance] on you." Shortly thereafter, Plaintiff was charged with threatening behavior and transferred to administrative segregation. Plaintiff asserts that Defendant Johnson charged him with threatening behavior as retaliation for Plaintiff having previously filed two grievances against him. Plaintiff remained in administrative segregation until January 26, 2009.

On February 12, 2009, Plaintiff again experienced chest pains. Plaintiff reported this to Defendant Calvin as she was making her rounds. Calvin responded, "Get your cup!" When Plaintiff repeated that he was having chest pains, Defendant Calvin stated, "I don't care" and walked away. Approximately ten minutes later, Defendant Kerkala came to Plaintiff's cell. Plaintiff told him that he had taken three nitroglycerine pills and needed to see the nurse. Kerkala told Plaintiff that Calvin had reported that Plaintiff was being uncooperative. Defendant Kerkala departed without obtaining medical treatment for Plaintiff, who simply took another nitroglycerine pill and waited for RUO Hill to make

his rounds. After speaking with Plaintiff, Hill contacted a nurse. The nurse spoke with the on-call doctor, who directed that Plaintiff be taken to Marquette General Hospital.

Plaintiff claims that Defendants CMS and Lisa Sweet-Brown have a custom and/or practice of having their medical service providers deny his requests for out-patient treatment with a cardiologist to determine the cause of his chest pains.

Many of Plaintiff's claims have since been dismissed. Defendants Calvin and Kerkela now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue

for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.         Eighth Amendment Claim**

As noted above, Plaintiff alleges that on February 12, 2009, he began experiencing chest pain. Plaintiff alleges that he reported this to Defendant Calvin, who failed to assist him in any way. Plaintiff further alleges that Defendant Kerkala later refused his request to be examined by a nurse. Plaintiff asserts that Defendants Calvin and Kerkela denied his requests for medical treatment in violation of his Eighth Amendment rights. Defendants counter that they are entitled to summary judgment as to these claims.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to

abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

Defendant Calvin has submitted an affidavit in which she asserts that she went to Plaintiff's cell on February 12, 2009, to deliver his medications. (Dkt. #50, Exhibit A). Defendant Calvin further asserts that "[a]t no time during my interaction with Plaintiff did he say anything about chest pain." She asserts that Plaintiff did not "appear ill or in any distress." Defendant Calvin further asserts that "Plaintiff appeared normal, and was not holding his chest, or exhibiting any irregular symptoms that would cause alarm." Defendant Kerkela has also submitted an affidavit in which he asserts that while he was working as a Resident Unit Officer on February 12, 2009, Plaintiff never informed him that he required medical attention. (Dkt. #50, Exhibit 2). In response to the present motion, Plaintiff has not submitted any evidence but instead is relying on five affidavits attached to his original complaint. (Dkt. #1, Exhibits 1-5). Such do not advance Plaintiff's cause.

As is well recognized, "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)). Affidavits may be submitted in support of or opposition to a motion for summary judgment. *See* Fed. R. Civ. P. 56(e). To be admissible, however, in a summary judgment proceeding an affidavit must either: (a) be "sworn to before an officer authorized to administer an oath, such as a notary public, or (b) be "an unsworn declaration which is dated and signed by the declarant" and "subjects the declarant to penalties of perjury." *Trapaga v. Central States Joint Board Local 10*, 2007 WL 1017855 at *2 (N.D. Ill., Mar. 30, 2007) (citations omitted); *see also*, *McConnell v. Ritz-Carlton Watertower*, 39 Fed. Appx. 417, 420 (7th Cir., June 5, 2002) (in resolving motion for summary judgment, court properly rejected statements that "were not notarized or subscribed under penalty of perjury"); *Howell v. New Mexico Department of Aging & Long Term Services*, 2010 WL 3965927 at *4 (10th Cir., Oct. 12, 2010) (same).

Three of the affidavits on which Plaintiff relies fail to comply with this requirement and, therefore, cannot be considered. (Dkt. #1, Exhibits 1, 2, and 5). Moreover, the two affidavits which are properly executed do not in any way contradict the evidence submitted by Defendants Calvin and Kerkela. (Dkt. #1, Exhibits 3 and 4). Finally, while not raised by Plaintiff, the Court notes that Plaintiff's amended complaint contains a verification statement. As is well recognized, a properly verified complaint "carries the same weight as would an affidavit for the purposes of summary judgment." *El-Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). The verification statement included with Plaintiff's amended complaint, however, by its very terms applies only to the first four pages thereof. The verification statement is included on page four of the document and expressly states that Plaintiff declares that only "the foregoing is true/correct." (Dkt. #5 at 4). The allegations concerning the incident

in question, which do not appear until page eleven of the document, are simply not encompassed by Plaintiff's verification statement. Thus, such allegations are not admissible as evidence in opposition to the present motion.

In sum, the properly admissible evidence reveals that neither Defendant Calvin nor Defendant Kerkela violated Plaintiff's Eighth Amendment rights. Accordingly, the undersigned recommends that Defendant Calvin and Defendant Kerkela are both entitled to summary judgment as to Plaintiff's Eighth Amendment claims.

**II.        Exhaustion**

Defendants Kerkela and Calvin next assert that Plaintiff's claims against them must be dismissed for failure to properly exhaust administrative remedies.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

> requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005),

*cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Plaintiff's claims against Defendants Kerkela and Calvin arise from a February 12, 2009 incident in which Defendants allegedly refused Plaintiff's requests for medical care. On February 16, 2009, Plaintiff submitted a Step I grievance regarding this incident. (Dkt. #35, Exhibit 12). This grievance was denied on March 2, 2009, and returned to Plaintiff on March 6, 2009. On March 13, 2009, Plaintiff submitted his Step II appeal. Plaintiff's appeal was denied on March 23, 2009, and the grievance was returned to Plaintiff on March 30, 2009. Plaintiff subsequently appealed the matter to Step III, but such was "rejected. . .as untimely filed." *Id.* Defendants assert that because Plaintiff failed to properly grieve this incident through all three steps of the grievance process, his claim must be dismissed for failure to exhaust administrative remedies. Plaintiff counters that he did, in fact, timely appeal the matter to Step III. The evidence of record, however, reveals otherwise.

During the dates in question, the time limits applicable to the filing of grievances and grievance appeals was (and still is) controlled by Michigan Department of Corrections Policy Directive 03.02.130, which took effect July 9, 2007. This Policy Directive provides that a Step III grievance must be sent "to the Grievance and Appeals Section within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due,

including any extensions." *Id.* at ¶ FF. This Policy Directive further provides that "[g]rievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant." *Id.* at ¶ S.

Plaintiff does not assert that he failed to receive a response to his Step II grievance. To be considered timely filed, therefore, Plaintiff was required to submit his Step III grievance "within ten business days after receiving the Step II response." In his brief opposing the present motion, Plaintiff asserts that he received the response to his Step II grievance on April 10, 2009. The Court notes, however, that a statement contained in an unsworn pleading does not constitute evidence for purposes of a motion for summary judgment. *See, e.g., Rogers*, 292 Fed. Appx. at 428 n.3 ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment"). The grievance itself indicates that Plaintiff received the Step II response on March 30, 2009. The Step III response further indicates that Plaintiff "does not dispute the fact that he received the Step II response on 3/30/09." To be timely filed, therefore, Plaintiff was required to submit his Step III grievance within ten business days of March 30, 2009, or no later than April 13, 2009.

In response to the present motion, Plaintiff has submitted an affidavit executed by Andre Lee Coleman-Bey. (Dkt. #51, Exhibit 1). In his affidavit, Coleman-Bey asserts that Plaintiff gave him his Step III grievance for mailing. Coleman-Bey asserts that he did not submit Plaintiff's Step III grievance for mailing, however, until April 16, 2009. Plaintiff's Step III grievance was rejected "as untimely filed," a determination supported by Plaintiff's own evidence. Accordingly, the Court recommends, in the alternative, that Plaintiff's claims against Defendants Kerkela and Calvin be dismissed without prejudice for failure to properly exhaust administrative remedies.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Kerkela and Calvin's Second Motion for Summary Judgment</u>, (dkt. #49), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

          Respectfully submitted,


Date: January 18, 2011          /s/ Ellen S. Carmody
          ELLEN S. CARMODY
          United States Magistrate Judge