UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY CARNEY,

        Plaintiff,                        Hon. Gordon J. Quist

v.                                         Case No. 1:09 CV 598

DAN JOHNSON, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #104). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.

**BACKGROUND**

The events giving rise to the present action occurred while Plaintiff was incarcerated in the Marquette Branch Prison (MBP) and the Ionia Maximum Correctional Facility (ICF). Plaintiff initiated the present action on June 29, 2009, against MBP Nurse Dan Johnson, ICF Resident Unit Manager (RUM) (unknown) Greenfield, ICF Warden Willie Smith, ICF Nurse Supervisor Marie Jordan, Region I Clinical Administrative Assistant Jennie Stephenson, MBP Nurse Supervisor Sandra Shaker, MBP Nurse Kimberly Calvin, MBP Resident Unit Officer (RUO) (unknown) Kerkala and an unknown ICF Officer. Plaintiff has also sued Correctional Medical Services, Inc. (CMS) and CMS Regional

Manager Lisa Sweet-Brown. The following allegations are contained in Plaintiff's partially-verified[1] amended complaint. (Dkt. #5).

On March 10, 2008, while Plaintiff was incarcerated at ICF, Defendant Smith ordered Defendant Greenfield and an unidentified ICF Officer to pack Plaintiff's belongings so that he could be transferred to another facility. Greenfield and the unknown Officer failed to pack "several personal items" and "unopened food items." Plaintiff was not reimbursed for these items. After his belongings were packed, Plaintiff informed Defendant Greenfield that he needed his medication, which had also been packed. In response, Defendant Greenfield told Plaintiff, "you'll be alright" and then walked away.

While in transit, Plaintiff "began having chest pains as a direct result of not having his med[ication]." At some point, Plaintiff took three nitroglycerin pills in a ten-minute period. When this failed to resolve his chest pain, Plaintiff requested help from the "transportation staff." After arriving at MBP, Plaintiff was examined by "health care," after which he was transferred to Marquette General Hospital where examination revealed that Plaintiff was suffering from low levels of potassium. Plaintiff asserts that he was denied his medication from March 10, 2008, until March 14, 2008. Plaintiff further asserts that his chest pains and subsequent hospitalization "was a direct result of" the failure to provide him with his medication as he requested.

On March 13, 2008, Plaintiff was examined by Defendant Johnson. Plaintiff reported experiencing chest pains. Defendant Johnson "couldn't find anything wrong," but nevertheless referred Plaintiff to the doctor. Between March 14, 2008, and September 5, 2008, Plaintiff "had several disputes"

---

[1] Plaintiff's amended complaint contains a declaration that the statements on the first four pages (but only the first four pages) of the complaint are made "under the penalty of perjury." (Dkt. #5 at 4). Accordingly, only those factual allegations contained on pages 1-4 of Plaintiff's amended complaint are properly verified. The remaining factual allegations are not properly verified or made under the penalty of perjury.

regarding his health.[2]  On September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]."  Defendant Johnson undertook this action to "harass" Plaintiff and "have [Plaintiff's] cell trashed by [prison] staff."  Defendant Johnson was later instructed by an unidentified doctor to "take [Plaintiff's] blood pressure daily."  Defendant Johnson refused to comply with this instruction and, moreover, cancelled "a few" of Plaintiff's medical call-outs "for no apparent reason."

On or about September 17, 2008, Plaintiff "ate and threw up."  Defendant Johnson "dismissed" Plaintiff's concerns that he had been poisoned.  Plaintiff informed Johnson that because he received a special diet tray "it's not impossible to target [Plaintiff] if that's tru[]ly what someone wanted to do."  Defendant Johnson instead told Plaintiff that he had the flu and "refused to take and/or process" Plaintiff's request for medical care.

On November 5, 2008, Defendant Johnson brought Plaintiff's medication to his cell. Johnson told Plaintiff that "next time" he had to bring "a cup of water to his bars" to receive his medication, presumably so Johnson could watch Plaintiff take his medication.  When Plaintiff asked Defendant Johnson why he was changing the manner in which he received his medication, Johnson called him an "asshole."  Plaintiff told Johnson that he was "doing this" because a black man was President. Johnson retorted, "fuck you, I don't care nothing about that shit."  Plaintiff then told Johnson, "don't be talking to me like that or I'll file another [grievance] on you."  Shortly thereafter, Plaintiff was charged with threatening behavior and transferred to administrative segregation.  Plaintiff asserts that Defendant Johnson charged him with threatening behavior as retaliation for Plaintiff having previously

---

[2] Plaintiff has not identified the individual or individuals with whom he had these alleged disputes.

filed two grievances against him. Plaintiff remained in administrative segregation until January 26, 2009.

On February 12, 2009, Plaintiff again experienced chest pains. Plaintiff reported this to Defendant Calvin as she was making her rounds. Calvin responded, "Get your cup!" When Plaintiff repeated that he was having chest pains, Defendant Calvin stated, "I don't care" and walked away. Approximately ten minutes later, Defendant Kerkala came to Plaintiff's cell. Plaintiff told him that he had taken three nitroglycerine pills and needed to see the nurse. Kerkala told Plaintiff that Calvin had reported that Plaintiff was being uncooperative. Defendant Kerkala departed without obtaining medical treatment for Plaintiff, who simply took another nitroglycerine pill and waited for RUO Hill to make his rounds. After speaking with Plaintiff, Hill contacted a nurse. The nurse spoke with the on-call doctor, who directed that Plaintiff be taken to Marquette General Hospital.

Plaintiff also claims that Defendants CMS and Lisa Sweet-Brown have a custom and/or practice of having their medical service providers deny his requests for out-patient treatment with a cardiologist to determine the cause of his chest pains.

Most of Plaintiff's claims have since been dismissed. The only claims remaining in this matter are claims against Defendants Greenfield, Sweet-Brown, Johnson, and CMS. Defendants Greenfield and Johnson now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of

the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Defendant Johnson**

The only claims remaining against Defendant Johnson are: (1) that Johnson failed to take Plaintiff's blood pressure daily as instructed by an unidentified doctor, and (2) that Johnson cancelled "a few" of Plaintiff's medical call-outs "for no apparent reason." Plaintiff alleges that Johnson's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

      A.    Blood Pressure Monitoring

Plaintiff's claim that Defendant Johnson failed to sufficiently monitor his blood pressure fails because he cannot satisfy either prong of the analysis. First, Plaintiff has submitted no evidence to support his allegation that any medical provider instructed Defendant Johnson (or anybody else) to measure his blood pressure every day. While Plaintiff makes this allegation in his amended complaint, such is contained in a portion thereof that is not properly verified. Likewise, Plaintiff has failed to

submit any evidence that he was experiencing a condition making it necessary or appropriate to daily measure his blood pressure. Thus, Plaintiff cannot establish that he was experiencing a serious medical need. Furthermore, even if the Court assumes that Plaintiff was experiencing a serious medical need that necessitated that his blood pressure be measured every day, Plaintiff has submitted no evidence that Defendant Johnson was aware of such requirement.

In support of his motion for summary judgment, Defendant Johnson has submitted an affidavit in which he asserts that "[o]n July 28, 2008, Doctor Bohjanen placed an order for nurses to check [Plaintiff's] blood pressure on a *regular* basis." (Dkt. #107) (emphasis added). Johnson further asserts that between July 30, 2008, and September 11, 2008, "[n]urses, including myself, checked [Plaintiff's] blood pressure" on thirteen separate days. Plaintiff has submitted no evidence that this level of blood pressure monitoring was insufficient or adversely impacted his health.

In sum, the evidence before the Court reveals that Plaintiff was not denied necessary medical treatment. Rather, Plaintiff simply disagrees with the treatment he received which, as discussed above, does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Johnson is entitled to summary judgment as to this particular claim.

### B.    Medical Call-Outs

Plaintiff's claim that Defendant Johnson cancelled "a few" of his medical call-outs "for no apparent reason" also fails for want of evidence. Plaintiff has submitted no evidence that Defendant Johnson cancelled any of his medical call-outs or otherwise acted to interfere with his medical treatment. Again, while Plaintiff's amended complaint contains allegations concerning this particular claim, such are not properly verified. On the other hand, Defendant Johnson asserts in his affidavit that he cancelled

Plaintiff's call-out on only a single occasion, August 26, 2008, "based on the need to address an emergent situation." Plaintiff has submitted no evidence that on the day in question he was experiencing a medical condition that Defendant Johnson knew or should have known required immediate treatment or that having this lone appointment rescheduled adversely impacted his health. Defendant Johnson's act of rescheduling a single non-emergency medical appointment hardly implicates the Eighth Amendment. The undersigned recommends, therefore, that Defendant Johnson is entitled to summary judgment as to this particular claim.

### II.     Defendant Greenfield

In the properly verified portion of his amended complaint, Plaintiff asserts that when Defendant Greenfield packed his belongings for transfer to another facility he included therein certain prescription medication. When Plaintiff brought this to Defendant's attention, Greenfield responded, "you'll be alright." Plaintiff further alleges that while traveling to his new location, he began experiencing "chest pains as a direct result of not having his meds." Plaintiff was later taken to a hospital where he was treated for low potassium level. Plaintiff alleges that Defendant Greenfield's refusal to allow him to personally carry the prescription medication in question during his transfer violated his Eighth Amendment right to be free from cruel and unusual punishment.

In support of his motion for summary judgment, Defendant Greenfield has submitted an affidavit in which he asserts that, pursuant to MDOC policy, the "medical staff" determines which medications a prisoner is permitted to personally transport during transit to another correctional facility. (Dkt. #111). Any other medications are transported in the custody of "transportation staff." Defendant

Greenfield asserts that Plaintiff "could have requested access to restricted medications from the transportation officers."

Plaintiff offers no evidence to refute the assertions in Greenfield's affidavit. Plaintiff has presented no evidence that medical staff approved for him to personally transport the medication in question. Plaintiff has also presented no evidence that on the date in question he was experiencing a medical condition that necessitated that he personally transport the medication in question. Thus, Plaintiff has failed to establish that the deprivation he suffered (i.e., having his medication under the control of transportation staff rather than himself) was sufficiently serious to implicate the Eighth Amendment. Moreover, even if the Court assumes that on the date in question Plaintiff was experiencing a condition that necessitated that he personally transport the medication in question, Plaintiff has presented no evidence that Defendant Greenfield knew or should have known that such was the case. Plaintiff has also presented no evidence that he ever asked the transportation officers for the medication in question or that any such requests were denied or unnecessarily delayed.

In sum, Plaintiff has failed to establish that he was denied or deprived of the medication in question. Plaintiff has, at most, merely established only that he disagreed with the decision that the medication in question be transported under the control of the transportation officers. While such a circumstance may sound in state tort law it simply does not implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Greenfield is entitled to summary judgment.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #104), be **granted**. The undersigned further recommends that appeal of

this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 18, 2011               /s/ Ellen S. Carmody
                                      ELLEN S. CARMODY
                                      United States Magistrate Judge