UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY CARNEY,

    Plaintiff,                                     Hon. Gordon J. Quist

v.                                              Case No. 1:09 CV 598

DAN JOHNSON, et al.,

    Defendants.
_____/

### REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Correctional Medical Services, Inc.'s Motion for Summary Judgment. (Dkt. #99). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**. The undersigned further recommends that Plaintiff's claims against Defendant Sweet-Brown be **dismissed without prejudice** for failure to timely effect service.

### BACKGROUND

The events giving rise to the present action occurred while Plaintiff was incarcerated in the Marquette Branch Prison (MBP) and the Ionia Maximum Correctional Facility (ICF). Plaintiff initiated the present action on June 29, 2009, against numerous individuals and entities. The following allegations are contained in Plaintiff's partially-verified[1] amended complaint. (Dkt. #5).

---

[1] Plaintiff's amended complaint contains a declaration that the statements on the first four pages (but only the first four pages) of the complaint are made "under the penalty of perjury." (Dkt. #5 at 4). Accordingly, only those factual allegations contained on pages 1-4 of Plaintiff's amended complaint are properly verified. The remaining factual allegations are not properly verified or made under the penalty of perjury.

On March 10, 2008, while Plaintiff was incarcerated at ICF, Defendant Smith ordered Defendant Greenfield and an unidentified ICF Officer to pack Plaintiff's belongings so that Plaintiff could be transferred to another facility. Greenfield and the unknown Officer failed to pack "several personal items" and "unopened food items." Plaintiff was not reimbursed for these items. After his belongings were packed, Plaintiff informed Defendant Greenfield that he needed his medication, which had also been packed. In response, Defendant Greenfield told Plaintiff, "you'll be alright" and then walked away.

While in transit, Plaintiff "began having chest pains as a direct result of not having his med[ication]." At some point, Plaintiff took three nitroglycerin pills in a ten-minute period. When this failed to resolve his chest pain, Plaintiff requested help from the "transportation staff." After arriving at MBP, Plaintiff was examined by "health care," after which he was transferred to Marquette General Hospital where examination revealed that Plaintiff was suffering from low levels of potassium. Plaintiff asserts that he was denied his medication from March 10, 2008, until March 14, 2008. Plaintiff further asserts that his chest pains and subsequent hospitalization "was a direct result of" the failure to provide him with his medication as he requested.

On March 13, 2008, Plaintiff was examined by Defendant Johnson. Plaintiff reported experiencing chest pains. Defendant Johnson "couldn't find anything wrong," but nevertheless referred Plaintiff to the doctor. Between March 14, 2008, and September 5, 2008, Plaintiff "had several disputes" regarding his health.[2] On September 5, 2008, Defendant Johnson "gave [Plaintiff's] meds to an unknown prisoner so he had RUO McBride shake [Plaintiff's] cell down to find meds and harass [Plaintiff]." Defendant Johnson undertook this action to "harass" Plaintiff and "have [Plaintiff's] cell

---

[2] Plaintiff has not identified the individual or individuals with whom he had these alleged disputes.

trashed by [prison] staff." Defendant Johnson was later instructed by an unidentified doctor to "take [Plaintiff's] blood pressure daily." Defendant Johnson refused to comply with this instruction and, moreover, cancelled "a few" of Plaintiff's medical call-outs "for no apparent reason."

On or about September 17, 2008, Plaintiff "ate and threw up." Defendant Johnson "dismissed" Plaintiff's concerns that he had been poisoned. Plaintiff informed Johnson that because he received a special diet tray "it's not impossible to target [Plaintiff] if that's tru[]ly what someone wanted to do." Defendant Johnson instead told Plaintiff that he had the flu and "refused to take and/or process" Plaintiff's request for medical care.

On November 5, 2008, Defendant Johnson brought Plaintiff's medication to his cell. Johnson told Plaintiff that "next time" he had to bring "a cup of water to his bars" to receive his medication, presumably so Johnson could watch Plaintiff take his medication. When Plaintiff asked Johnson why he was changing the manner in which he received his medication, Johnson called him an "asshole." Plaintiff told Johnson that he was "doing this" because a black man was President. Johnson retorted, "fuck you, I don't care nothing about that shit." Plaintiff then told Johnson, "don't be talking to me like that or I'll file another [grievance] on you." Shortly thereafter, Plaintiff was charged with threatening behavior and transferred to administrative segregation. Plaintiff asserts that Defendant Johnson charged him with threatening behavior as retaliation for Plaintiff having previously filed two grievances against him. Plaintiff remained in administrative segregation until January 26, 2009.

On February 12, 2009, Plaintiff again experienced chest pains. Plaintiff reported this to Defendant Calvin as she was making her rounds. Calvin responded, "Get your cup!" When Plaintiff repeated that he was having chest pains, Defendant Calvin stated, "I don't care" and walked away. Approximately ten minutes later, Defendant Kerkala came to Plaintiff's cell. Plaintiff told him that he

had taken three nitroglycerine pills and needed to see the nurse. Kerkala told Plaintiff that Calvin had reported that Plaintiff was being uncooperative. Defendant Kerkala departed without obtaining medical treatment for Plaintiff, who simply took another nitroglycerine pill and waited for RUO Hill to make his rounds. After speaking with Plaintiff, Hill contacted a nurse. The nurse spoke with the on-call doctor, who directed that Plaintiff be taken to Marquette General Hospital.

In addition to the aforementioned allegations, Plaintiff also alleges that Defendants CMS and Lisa Sweet-Brown "have a custom and/or practice of having (MSP's), Medical Service Providers deny [Plaintiff] cardiac out-patient treatment to a cardiologist to see what exactly his requests for out-patient treatment with a cardiologist to see what exactly is the cause of [his] chest pains." Many of Plaintiff's claims have since been dismissed. Defendant CMS now moves for summary judgment.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th

Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Defendant CMS asserts two arguments in support of its motion. First, Defendant argues that Plaintiff has failed to properly exhaust his claims. Defendant also argues that it is entitled to summary judgment.

**I.        Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly

(preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Michigan Department of Corrections Policy Directive 03.02.130 (effective July 9, 2007) articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue.

*Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P-Q. The policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶¶ W-X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by policy, *e.g.*, the regional health administrator for grievances concerning health care issues. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances. *Id.* at ¶ GG. The total grievance process from the filing of the Step I grievance to providing a response at Step III "shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." *Id.* at ¶ S.

Defendant asserts that Plaintiff failed to submit any grievance to prison officials regarding his allegations against CMS. Plaintiff does not dispute this, but nevertheless asserts that dismissal on exhaustion grounds is inappropriate because he pursued the administrative remedies that were available

to him. While Plaintiff is correct that the PLRA only requires that he exhaust such administrative remedies "as are available," 42 U.S.C. § 1997e(a), the Court concludes that Plaintiff failed to exhaust his available administrative remedies.

In support of his argument, Plaintiff relies on an MDOC policy provision which states that a grievance will be rejected if it raises "[i]ssues not within the authority of the Department to resolve." MDOC Policy Directive 03.02.130 ¶ (F)(5). This provision further states that in such a circumstance, "[t]he grievant shall be told who to contact in order to attempt to resolve the issue, if known." *Id.* Implicit in this language is that decisions about what constitutes an issue "not within the authority of the Department to resolve" are to be made by prison officials. This makes sense as prison officials, as opposed to prisoners, are best suited to determine whether the Department can resolve a particular issue.

In his affidavit, Plaintiff asserts that instead of filing a prison grievance he attempted to contact CMS directly to address his claim that he was not receiving appropriate medical care. (Dkt. #102). Plaintiff asserts that was instructed by a doctor to contact CMS directly. Plaintiff further asserts that his letters to CMS regarding this matter were ignored. *Id.* Plaintiff argues that such constitutes proper exhaustion of his claim against CMS. The Court is not persuaded. Plaintiff has presented no evidence that he was informed by any MDOC official that the issue in question was "not within the authority of the Department to resolve." Moreover, the assertion that the MDOC lacks the authority to resolve claims concerning allegedly inadequate medical treatment defies common sense, as well as MDOC policy which expressly defines allegations of "unsatisfactory conditions of confinement" as a grievable issue. MDOC Policy Directive 03.02.130 ¶ (E). Accordingly, the undersigned recommends

that Plaintiff's claim against CMS be dismissed without prejudice for failure to exhaust administrative remedies.

**II.       Custom and Practice**

In his amended complaint, Plaintiff asserts that Defendant CMS employs a "custom and/or practice" pursuant to which inmates are denied medical treatment. CMS, however, is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). Despite having had more than two years to conduct discovery and gather evidence, Plaintiff has submitted no evidence that would entitle him to prevail on his claim against CMS. Therefore, the undersigned recommends, in the alternative, that Defendant CMS is entitled to summary judgment.

**III.       Defendant Lisa Sweet-Brown**

Plaintiff initiated this matter on June 29, 2009, against numerous defendants including Lisa Sweet-Brown. On September 11, 2009, a summons was issued to Sweet-Brown and delivered to the United States Marshal for service. On October 7, 2009, an acknowledgment of service as to Sweet-Brown was filed with the Court. On October 23, 2009, however, Sweet-Brown moved to dismiss Plaintiff's claims on the ground that Plaintiff failed to properly effect service upon her.

On June 4, 2010, the undersigned recommended that Sweet-Brown's motion be granted in part and denied in part. Specifically, the undersigned concluded that "the service of process in this matter was defective," but disagreed that dismissal of Plaintiff's claims was appropriate. Instead, the undersigned recommended that Plaintiff be given until August 16, 2010, to properly effect service on Sweet-Brown. The undersigned further recommended that the Clerk of the Court arrange for service on Sweet-Brown in an appropriate manner (e.g., by certified mail, delivery restricted to Sweet-Brown). On July 9, 2010, the Honorable Gordon J. Quist adopted these recommendations.

On July 12, 2010, a summons was again issued to Lisa Sweet-Brown and delivered to the United States Marshal for service. On July 27, 2010, this summons was returned to the Court unexecuted. On August 4, 2010, the Court ordered CMS to provide the Court "the address of the location at which Defendant Sweet-Brown is presently employed." On August 6, 2010, CMS provided the requested information and on August 12, 2010, another summons was issued to Lisa Sweet-Brown and delivered to the United States Marshal for service. On September 22, 2010, this summons was returned to the Court unexecuted. In the almost one year since, Plaintiff has neither requested an extension of time to effect service on Sweet-Brown nor requested the Court's assistance in accomplishing such.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, "the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

In light of the circumstances, the undersigned recommends that Plaintiff's claims against Defendant Sweet-Brown be dismissed without prejudice for failure to timely effect service.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendant Correctional Medical Services, Inc.'s Motion for Summary Judgment</u>, (dkt. #99), be **granted**. The undersigned further recommends that Plaintiff's claims against Defendant Sweet-Brown be **dismissed without prejudice** for failure to timely effect service. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 29, 2011          /s/ Ellen S. Carmody
                                 ELLEN S. CARMODY
                                 United States Magistrate Judge